MICHIGAN FARM BUREAU v BUREAU OF WORKMEN'S
COMPENSATION

Docket No. 59815. Argued November 14, 1978 (Calendar No. 4).—
Decided March 18, 1980.

The Director of the Bureau of Workmen's Compensation issued
certain letters in which he computed maximum and minimum
workers' compensation weekly benefits, which included cost-of-
living adjustments under the Worker's Disability Compensation
Act. The letters advised all insurance companies and self-in-
sured employers that the Court of Appeals had decided that the
minimum benefit rates, as well as the maximum rates, were
"adjustable according to" a provision of the act. Plaintiffs
Michigan Farm Bureau, Farm Bureau Mutual Insurance Com-
pany of Michigan, and Underwriters Adjusting Company re-
quested a declaratory ruling by the Bureau of Workmen's
Compensation that the schedules of benefits were invalid. The
bureau denied the request. The plaintiffs then brought an
action against the Bureau of Workmen's Compensation and its
Director for a declaratory judgment that the schedules of
benefits were administrative rules and were, therefore, improp-
erly promulgated under the Administrative Procedures Act.
The Ingham Circuit Court, James T. Kallman, J., granted
accelerated judgment for the defendants. The Court of Appeals,
Quinn, P.J., and R. B. Burns and M. F. Cavanagh, JJ., reversed
on the ground that the circuit court has jurisdiction to deter-
mine the validity of the schedules of benefits as "rules" under
the Administrative Procedures Act (Docket No. 26771). Defen-
dants appeal. In an opinion by Justice Ryan, joined by Chief

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5, 9] 1 Am Jur 2d, Administrative Law § 92 et seq.
2 Am Jur 2d, Administrative Law § 277 et seq.
[2, 3] 81 Am Jur 2d, Workmen's Compensation § 81.
[4, 5] 1 Am Jur 2d, Administrative Law § 556 et seq.
82 Am Jur 2d, Workmen's Compensation § 613 et seq.
[6] 1 Am Jur 2d, Administrative Law §§ 83, 167.
2 Am Jur 2d, Administrative Law § 191.
[7, 8] 1 Am Jur 2d, Administrative Law §§ 92 set seq., 158 et seq.
2 Am Jur 2d, Administrative Law § 233 et seq.

Justice Coleman and Justices Kavanagh, Fitzgerald, and Moody, the Supreme Court *held:*

The letters of the Director of the Bureau of Workmen's Compensation announcing new rate schedules are not "rules" within the meaning of the Administrative Procedures Act.

The Administrative Procedures Act has a comprehensive provision defining the term "rule" which expressly excludes an "interpretive statement". Hence under the Michigan act, unlike the Federal, an "interpretive statement" is not, by definition, a rule at all. What is essential to a valid Michigan "rule" is: a reasonable exercise of legislatively delegated power, pursuant to proper procedure.

In this case, the director never took the procedural steps necessary to the formulation of a rule under the Administrative Procedures Act. The letters were the director's announcement of his interpretation of an opinion of the Court of Appeals, and consequently were interpretive statements within the meaning of the Administrative Procedures Act.

Justice Levin, joined by Justice Williams, concurring, wrote:

The letters did not reflect an exercise of discretion by the director regarding the meaning of the Worker's Disability Compensation Act; they did not set forth rules.

1. A rule promulgated by the Director of the Bureau of Workmen's Compensation is subject to the provisions of the Administrative Procedures Act concerning notice and comment, declaratory rulings, and declaratory judgments. The Administrative Procedures Act exempts only the procedure before the Bureau of Workmen's Compensation or the Worker's Compensation Appeal Board in contested cases and judicial review from its provisions. The Worker's Disability Compensation Act does not provide a procedure within the meaning of the Administrative Procedures Act for challenging or determining the validity or applicability of a rule promulgated by the Director of the Bureau of Workmen's Compensation. It does not relieve the bureau of complying with the Administrative Procedures Act when issuing policy declarations and statements within the act's definition of a rule. The review provisions of the act concerning the promulgation of rules also apply to a rule promulgated by the bureau.

2. It is not necessary in this case to consider whether the letters are, as the defendant asserts, within the "interpretive statement" exception to the general definition of a rule in the Administrative Procedures Act, since implicit in the definition is the concept of agency exercise of discretion. The Court of

Appeals had determined that certain increases in benefits were payable. It was the director's apparent understanding of the decision by the Court of Appeals, possibly on the advice of the Attorney General, that it applied in death cases and retroactively. By the letters the director made the following statements: i) the rates were required by the act as construed by the Court; ii) carriers and employers should make payment in accordance with the schedules; and, iii) implicitly, that he would seek to enforce that interpretation. When an appellate court construes a statute and the agency is bound by that construction, it is the court, not the agency, which has exercised choice and discretion, although the agency seeks to enforce the construction. The agency has not expressed a policy of general application in the exercise of discretion in the application or implementation of law enforced or administered by it. The asserted rule in this case is the director's apparent understanding, expressed by the letters and schedules, that the decision by the Court of Appeals required an increase in the minimum death benefits and was retroactive. He did not purport to be conveying his own construction of the act but, rather, to be implementing the Court's construction.

3. The letters did not purport to announce an *agency* implementation or application of the act. The director merely announced what he understood to be the *judicial* construction of the act. To be sure, the letters extended the holding to facts not there presented. This was done, however, in the apparent belief that the decision of the Court of Appeals required that extension, and was not done in the exercise of the policy-making authority of the agency. Because the letters were not a product of agency exercise of discretion and policy-making authority, they did not set forth rules.

4. The insurers and employers in this case were not, contrary to the plaintiffs' contentions, substantially and immediately affected by the director's statements. The only consequence of a failure to comply with the rate schedules attached to the letters would be that the insurer or employer might be subjected to adversary proceedings by an injured worker or his dependent, or by the director seeking compliance with the decision of the Court of Appeals. The act provides no sanctions or penalties for noncompliance with the director's rate schedules. Even if the director had never publicly announced a view concerning minimum compensation rates required to comply with the decision, he would still have possessed authority to institute compliance proceedings if he believed that the requirements of the act, as construed by the Court of Appeals, had not been observed. The

director's announcement of his interpretation of the decision in no way expanded his authority to institute compliance proceedings. His announcement, indeed, may have limited his ability to institute compliance proceedings because he is arguably limited by his own declarations.

5. The majority opinion reaches the same result on the ground that the letters were "interpretive statements" and in so doing implies that what might otherwise be a rule within the definition of the Administrative Procedures Act is not a rule if the agency exceeds its legislatively delegated power or fails to comply with the procedural notice and comment provisions of the act. The Legislature did not intend that the policy, scope, and requirements of the act be so easily circumvented. Agency pronouncements within the definition of a rule may have the practical force and effect of a rule although the agency has not observed the notice and comment requirements of the Administrative Procedures Act.

Reversed.

75 Mich App 362; 254 NW2d 890 (1977) reversed.

OPINION OF THE COURT

1. ADMINISTRATIVE LAW — RULES.

The Administrative Procedures Act has a comprehensive provision defining the term "rule" which expressly excludes an "interpretive statement"; what is essential to a valid Michigan "rule" is: a reasonable exercise of legislatively delegated power, pursuant to proper procedure (MCL 24.207; MSA 3.560[107]).

2. WORKMEN'S COMPENSATION — ADMINISTRATIVE LAW — RULES — SCHEDULES OF BENEFITS.

Letters by the Director of the Bureau of Workmen's Compensation which sought to announce what the director thought a decision of the Court of Appeals required and to implement the decision by schedules of minimum and maximum workers' compensation weekly benefits including cost-of-living adjustments fall within the exclusion of an "interpretive statement" from the definition of a "rule" in the Administrative Procedures Act where the director never took the procedural steps necessary to the formulation of a rule under the Administrative Procedures Act (MCL 24.207; MSA 3.560[107]).

CONCURRING OPINION BY LEVIN, J.

3. WORKMEN'S COMPENSATION — ADMINISTRATIVE LAW — RULES — DECLARATORY JUDGMENTS.

*A rule promulgated by the Director of the Bureau of Workmen's*

Compensation is subject to the provisions of the Administrative Procedures Act concerning notice and comment, declaratory rulings and judgments (MCL 24.231-24.264, 418.205; MSA 3.560[131]-3.560[164], 17.237[205]).

4. WORKMEN'S COMPENSATION — ADMINISTRATIVE LAW — CONTESTED CASES — JUDICIAL REVIEW.

The Administrative Procedures Act provides that only the provisions of that act concerning the procedures in contested cases and judicial review shall not apply to the Bureau of Workmen's Compensation or to the Worker's Compensation Appeal Board (MCL 24.315; MSA 3.560[215]).

5. WORKMEN'S COMPENSATION — ADMINISTRATIVE LAW — RULES.

The Worker's Disability Compensation Act does not provide a procedure, within the meaning of the Administrative Procedures Act, for challenging or determining the validity or applicability of a rule promulgated by the Director of the Bureau of Workmen's Compensation; it does not relieve the Bureau of Workmen's Compensation of complying with the Administrative Procedures Act when issuing policy declarations and statements within the Administrative Procedures Act's definition of a rule (MCL 24.264, 418.841; MSA 3.560[164], 17.237[841]).

6. ADMINISTRATIVE LAW — RULES — WORDS AND PHRASES.

Implicit in the definition of a "rule" within the meaning of the Administrative Procedures Act is the concept of exercise by the agency of its discretion (MCL 24.207; MSA 3.560[107]).

7. ADMINISTRATIVE LAW — RULES — WORDS AND PHRASES.

Statements by an administrative agency informing interested parties that an appellate court has construed a statute that the agency administers and setting out the agency's interpretation of that construction are not administrative "rules" within the meaning of the Administrative Procedures Act because it is the court, not the agency, which has exercised choice and discretion; the agency has not expressed a policy of general applicability in the application or implementation of law enforced or administered by it (MCL 24.207; MSA 3.560[107]).

8. WORKMEN'S COMPENSATION — ADMINISTRATIVE LAW — RULES — SCHEDULES OF BENEFITS.

Letters by the Director of the Bureau of Workmen's Compensation which sought to inform insurers and employers of what the director thought a decision of the Court of Appeals required and to implement the decision by schedules of minimum and maximum workers' compensation weekly benefits, which in-

*cluded cost-of-living adjustments, did not set forth "rules"
within the meaning of the Administrative Procedures Act; the
letters did not purport to announce an implementation or ·
application of the Worker's Disability Compensation Act by the
administrative agency, and they were not a product of the
agency's exercise of discretion and policy-making authority
(MCL 24.207; MSA 3.560[107]).*

9. ADMINISTRATIVE LAW — RULES — NOTICE.

   *Agency pronouncements within the definition of a rule may have
   the practical force and effect of a rule although the agency has
   not observed the notice and comment requirements of the
   Administrative Procedures Act; the Legislature did not intend
   that the policy, scope, and requirements of the act could be
   circumvented by an agency so that what might otherwise be a
   rule within the act would not be a rule if the agency exceeds its
   legislatively delegated power or fails to comply with the proce-
   dural notice and comment provisions of the act (MCL 24.207,
   24.231-24.264; MSA 3.560[107], 3.560[131]-3.560[164]).*

*Miller, Canfield, Paddock & Stone* (by *Gregory L.
Curtner* and *Nancy N. Grekin*) for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Francis W. Ed-
wards* and *Eileen Zielesch,* Assistants Attorney
General, for defendants.

RYAN, J. The facts which underlie the issues to
be decided and the decision of the lower court are
fully and accurately detailed in Justice LEVIN's
concurring opinion to which reference is invited.
There is no need to repeat them here.

We agreed to review this case to answer two
questions:

"(1) Whether the letters of the director of the Bureau
of Workmen's Compensation, establishing new rate
schedules, constitute 'rules' within the meaning of the
Administrative Procedures Act of 1969, 1969 PA 306, as
amended? (2) Whether, assuming *pro arguendo* that
said letters do constitute 'rules' within the meaning of

the Administrative Procedures Act, circuit court review of the validity of same pursuant to APA § 64; MCLA 24.264; MSA 3.560(164) is appropriate?" 402 Mich 920-921 (1978).

Because we answer the first question in the negative, we do not reach the second.

The Michigan Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* contains a comprehensive provision defining the term "rule" which expressly excludes certain material. The basic definition and the pertinent exclusion are:

" 'Rule' means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but *does not* include the following:

\* \* \*

"(h) A form with instructions, an *interpretive statement,* a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory." (Emphasis supplied.) MCL 24.207; MSA 3.560(107).

By way of comparison, the Federal administrative procedures act contains the following definition of the term "rule" as it is there used:

"(4) 'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, *interpret,* or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, ser-

vices or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing." (Emphasis supplied.) 5 USC 551(4).

Although not required to do so by the Federal act,[1] Federal agencies, as a practical matter, often follow the statutorily prescribed rule-making procedures for interpretative as well as legislative rules. This practice has been the source of litigation in Federal courts going to the issue of whether, in particular cases, agency rules were "legislative" or "interpretative". See generally, 1 Davis, Administrative Law Treatise, § 5.03; Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise, § 5.03.

Hence, while under the Federal act a rule can be legislative or interpretative, under the Michigan act an "interpretive statement" is *not*, by definition, a rule at all.[2]

It would seem, then, that rules which are "legislative" under the Federal act would be analogous to "rules" under our act.

Professor Davis describes a Federal legislative rule as follows:

"*A legislative rule is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the legislative body.* In the clearest case of a legislative rule, a statute has conferred power upon the agency to issue the rule and the statute provides that the rule, if within the granted power, shall have the force of law. But a legislative rule may rest upon an implied or an unclear grant of power as well as upon an express and clear grant of power.

---

[1] 5 USC 553(b)(A).

[2] The Michigan Administrative Procedures Act has been amended to define another kind of agency action, a "guideline". 1977 PA 108; MCL 24.203(6); MSA 3.560(103)(6). See also MCL 24.224 *et seq.;* MSA 3.560(124) *et seq.,* governing the adoption of guidelines.

When a rule is legislative, the reviewing court has no authority to substitute judgment as to the content of the rule, for the legislative body has placed the power in the agency and not in the court. *A legislative rule is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.* The requirement of reasonableness stems both from the idea of constitutional due process and from the idea of statutory interpretation that legislative bodies are assumed to intend to avoid the delegation of power to act unreasonably." (Emphasis supplied.) 1 Davis, Administrative Law Treatise, § 5.03, p 299. See, also, 2 Davis, Administrative Law Treatise (2d ed, 1978), § 7:8, p 36.

In addition, Professor Davis offers an analysis of the difference between "legislative" and "interpretative" rules under the Federal act which is relevant to our analysis of the difference between "rules" and "interpretive statements" under our state act:

"A helpful proposition not stated in the Treatise is this: Any officer who has discretionary power necessarily also has the power to state publicly the manner in which he will exercise it, and any such public statement can be adopted through a rulemaking procedure, whether or not the legislative body has separately conferred a rulemaking power on the officer. But what such an officer says in explaining what he does is necessarily the law only to the extent that he is exercising power delegated to him by the legislative body.

"When an agency has no delegated power to make law through rulemaking, the rules it issues are necessarily interpretative. When it has the delegated power, its rules may be either legislative or interpretative, depending on which kind of rules the agency intends to make. An agency with power to make both kinds of rules necessarily has authority to determine which kind it is making, and the best evidence of its intent is what it says when it issues the rules. If it says it is not following notice and comment procedure because it

intends the rules to be interpretative, then the rules are clearly interpretative no matter what their impact. If the agency says it is using notice and comment procedure because it intends the rules to be legislative, then that makes them so; if they are valid, the courts are bound by them as if they were statutes. The crucial question is whether the agency intends to exercise delegated power to make rules having force of law, and the intent usually can best be found in what the agency says at the time of issuing the rules." Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise, § 5.03, pp 147-148.

These authorities suggest that what is essential to a valid Federal "legislative rule" or Michigan "rule" is: a reasonable exercise of legislatively delegated power, pursuant to proper procedure.

In the present case, it is acknowledged that the director never took the procedural steps[3] necessary to the formulation of a rule under our act.[4] More-

---

[3] See MCL 24.243; MSA 3.560(143).

[4] This case does not present any issue concerning when an agency's rules or actions are binding upon the agency absent compliance with the procedural requirements of our Administrative Procedures Act, and no opinion is here intimated on that issue.

However, it is worthwhile to point out that here again our state act differs, perhaps significantly, from the Federal act.

The Federal rule-making requirements do *not* apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice"; 5 USC 553(b)(A). A review of Federal authority reveals that it is not clear that a Federal agency will always be bound by its own informally developed policies or practices. See, *e.g., American Farm Lines v Black Ball Freight Service,* 397 US 532, 538-539; 90 S Ct 1288; 25 L Ed 2d 547 (1970). See also Note: *Violations by Agencies of Their Own Regulations,* 87 Harv L Rev 629 (1974); Berger, *Do Regulations Really Bind Regulators?,* 62 Northwestern U L Rev 137 (1967).

However, it has been declared, with respect to the Federal act, that, at a minimum, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures". *Morton v Ruiz,* 415 US 199, 235; 94 S Ct 1055; 39 L Ed 2d 270 (1974). See generally Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise (1977 Supp), § 5.03-5; 2 Davis, Administrative Law Treatise (2d ed, 1978), § 7:21.

In comparison, our state act offers more guidance in this area. Our

over, as Justice LEVIN recognizes, the letters in this case were "the director's announcement of his interpretation of *Jolliff*". Consequently, the letters were "interpretive statements" within the above discussed exclusion to the definition of "rule".

The decision of the Court of Appeals is reversed.

COLEMAN, C.J., and KAVANAGH, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

LEVIN, J. In *Jolliff v American Advertising Distributors, Inc,*[1] the Court of Appeals held that the minimum, as well as the maximum, workers' compensation benefit payable to an injured worker was subject to adjustment to reflect the increase in the average weekly wage in covered employment.

Shortly after *Jolliff* was decided, the Director of the Bureau of Worker's Compensation sent letters to workers' compensation insurance companies and self-insured employers which included new compensation rate schedules reflecting adjustments in death benefits as well as disability benefits and which applied *Jolliff* retroactively to the date of the amendment to the act which provided for adjustment.

---

act's definition of "rule" *includes* "an agency regulation, statement, standard, policy * * * which prescribes the organization, procedure or practice of the agency". MCL 24.207; MSA 3.560(107). Expressly *excluded* from the definition of "rule" is an agency's "memorandum, directive or communication which *does not affect* the rights of, or procedures and practices available to, the public". MCL 24.207(g); MSA 3.560(107)(g) (emphasis added). The Michigan act mandates the promulgation of *rules* by an agency "prescribing its procedures available to the public and the methods by which the public may obtain information and submit requests". MCL 24.233(2); MSA 3.560(133)(2). It appears then that our act may actually require state agencies to promulgate, as *rules,* their regulations, statements, standards, policies, etc., which affect the rights of, or procedures available to, the public.

[1] *Jolliff v American Advertising Distributors, Inc,* 49 Mich App 1; 211 NW2d 260 (1973).

The question presented is whether those letters set forth rules within the meaning of the Administrative Procedures Act.[2] The Court of Appeals held that they did. We agree with the majority that they did not, and that the Court of Appeals should be reversed.

I

The Worker's Disability Compensation Act was amended (effective September 1, 1965), to provide that "[t]he maximum weekly rate in each dependency classification shall be adjusted once each year in accordance with the increase or decrease in the average weekly wage in covered employment, as determined by the Michigan employment security commission".[3]

The Court of Appeals held in *Jolliff* that by reason of other language in the statute the minimum as well as the maximum benefit rates were "adjustable according to" that provision.[4] This Court denied leave to appeal[5] and a motion to reconsider.[6]

The director advised all insurance companies and self-insured employers, in April, 1974, that *Jolliff* had held that minimum compensation rates are adjustable, that leave to appeal had been denied, and that "the attached table indicates the new minimum rates, effective as indicated", and stated "[y]ou should make immediate arrangements to correct any file that may be effected

---

[2] MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.*

[3] 1965 PA 44, amending 1948 CL 412.9; MSA 17.159, now MCL 418.355; MSA 17.237(355).

[4] *Jolliff, supra,* p 4.

[5] *Jolliff v American Advertising Distributors, Inc,* 391 Mich 780 (1974).

[6] Unpublished order, June 27, 1974.

*[sic]."* A second letter, in July, 1974, called attention to the April letter, stated that an attempt had been made by "a number of self-insured employers and insurance companies to again ask" this Court to hear *Jolliff,* that in June, 1974 this Court declined to do so, that "[t]herefore, there is no question at this time but that the order of the Court of Appeals is final and the new minimum compensation rates as attached are now payable" and requested that insurers "[p]lease take immediate steps to be governed accordingly".

The rate schedule attached to the letters stated minimum and maximum "weekly compensation rates" and "weekly death compensation rates" for the period September 1, 1965 to December 31, 1968, the years 1969, 1970, 1971, 1972 and 1973, and from January 1, 1974 on.

Jolliff had been injured in 1970. The questions whether *Jolliff* was to be retroactive to the amendment of the act or applied in death cases had not been presented or decided. The director's letters therefore extended *Jolliff* beyond what it decided.[7]

Plaintiffs, Michigan Farm Bureau, Farm Bureau Mutual Insurance Company of Michigan, and Underwriters Adjusting Company, sought a declaratory ruling, in October, 1974, pursuant to the APA that, among other things, *Jolliff* does not apply retroactively "to injuries occurring prior to the date on which the *Jolliff* decision became or will become final", and "that the cost-of-living adjustments [required by the act] should not be applied to death benefits".

The director responded in December, 1974 that

---

[7] The question of the correctness of the director's interpretation of *Jolliff* is not before us, and we intimate no opinion thereon.

On November 20, 1979 this Court granted leave to appeal in *Gusler v Fairview Tubular Products* (Docket No. 63538) to consider the issue decided in *Jolliff.* 407 Mich 926 (1979).

steps were being taken to promulgate a rule pur-
suant to the APA, that "[b]ecause of the decision
to proceed through rule making, it is our belief
that we should not issue a declaratory ruling
which would only be binding on one specific case",
and stated that it is "our belief that a declaratory
ruling is not appropriate" "for the reason that the
Bureau of Workmen's Compensation is exempted
from" the contested case and judicial review chap-
ters of the APA:[8] "Jurisdiction to determine the
application of *Jolliff* to these cases is a controversy
concerning which [sic] shall be determined by the
Bureau pursuant to section 841 of the Workmen's
Compensation Act."[9] No formal rule was ever
promulgated.

A few days later the director advised insurers
and self-insured employers of a new weekly com-
pensation and death compensation rate schedule
reflecting changes required by *Alexander v Direc-
tor, Bureau of Workmen's Compensation*[10] for the
period commencing September 1, 1965, each year
1969 through 1974 and, additionally, the rates for
the period commencing January 1, 1975. It stated
that the maximum and minimum rates were based
on *Jolliff* "which holds that the minimum as well
as maximum rates are adjustable" according to

[8] The letter identified chapters 4 and 6 of the APA. Chapter 4
concerns procedures in contested cases, chapter 6, judicial review.

Chapter 3 concerns procedures for processing and publishing rules.

[9] "Any controversy concerning compensation shall be submitted to
the bureau and all questions arising under this act shall be deter-
mined by the bureau. The director shall be deemed to be an inter-
ested party in all workmen's compensation cases in questions of law."
MCL 418.841; MSA 17.237(841).

[10] *Alexander v Director, Bureau of Workmen's Compensation,* 53
Mich App 262; 218 NW2d 794 (1974), *lv den* 393 Mich 758 (1974),
which held that the June 30, 1967 base must be used as *each*
adjustment is made and that an adjustment merely reflecting the
change since the last adjustment was made did not comply with the
requirements of the act.

the provisions of the act "as advised by the Attorney General".

Plaintiffs commenced an action against the Bureau of Workmen's Compensation and its director in circuit court, pursuant to the APA, seeking a declaratory judgment that, among other things, the letters and attached schedule addressed to insurers and self-insured employers were rules within the meaning of the APA, that they were not adopted in accordance with its requirements and that the holding in *Jolliff* may not be applied retroactively or extended to death benefits. The circuit judge entered an accelerated judgment on the grounds that i) the court was without jurisdiction under § 64 of the APA[11] (concerning declaratory judgments regarding the validity or applicability of a rule), because the APA provides that "[a] rule or order establishing or fixing rates or tariffs" is not a rule within the meaning of the act[12] and the letters were orders establishing rates; ii) by reason of § 841 of the Worker's Disability Compensation Act, jurisdiction in compensation cases is in the bureau, the Worker's Compensation Appeal Board and the appellate courts, and a circuit court is without jurisdiction to decide compensation rates in specific cases, and iii) no rules had been promulgated which would give rise to review under § 64 of the APA.

The Court of Appeals, responding to the director's argument that even if the letters were rules the circuit court was without jurisdiction, held that § 841 does not vest exclusive jurisdiction in the bureau to determine the validity of rules promulgated by the director "making a challenge

---

[11] MCL 24.264; MSA 3.560(164).
[12] MCL 24.207(c); MSA 3.560(107)(c).

under the APA unavailable".[13] It further held that
"the 'rates and tariffs' exception was intended to
exempt only the rate fixing operations of the Pub-
lic Service Commission".[14] It concluded that the
letters set forth rules and that the circuit court
had jurisdiction to determine their validity.

We join in reversing the Court of Appeals be-
cause the letters did not reflect an exercise of
discretion by the director regarding the meaning
of the Worker's Disability Compensation Act. The
letters did not set forth rules.

## II

We agree with the Court of Appeals that a rule
promulgated by the director is subject to the provi-
sions of chapter 3 of the APA concerning notice
and comment, declaratory rulings and judgments.

The Worker's Disability Compensation Act pro-
vides that the director "may make rules not incon-
sistent with this act for carrying out the provisions
of the act in accordance with" the APA.[15]

---

[13] *Michigan Farm Bureau v Bureau of Workmen's Compensation,*
75 Mich App 362, 366; 254 NW2d 890 (1977).

[14] *Id.,* p 368.

See fn 18, *infra* for the text of this exception.

Our disposition makes it unnecessary to decide whether the sched-
ules attached to the director's letters are within the rates or tariffs
exception.

While expressing no view as to the proper construction of the
exception, we note that the statute establishing the Public Service
Commission contains procedural protections applicable to the exercise
of its rate-making authority, some of which duplicate the rule-making
safeguards of the APA. See MCL 460.1 *et seq.;* MSA 22.13(1) *et seq.;*
*Lansing v Public Service Comm,* 330 Mich 608; 48 NW2d 133 (1951).

The Worker's Disability Compensation Act contains no similar
procedural safeguards regarding adjustments in the maximum and
minimum weekly compensation rate schedules.

[15] The Worker's Disability Compensation Act (MCL 418.205; MSA
17.237[205]) states that the director may exercise his rule-making
power in accordance with 1943 PA 88, the former APA replaced by
the present APA (MCL 24.311; MSA 3.560[211]), which states that a

The APA provides that only chapters 4 (procedure in contested cases) and 6 (judicial review) of that act "shall not apply to the Bureau of Workmen's Compensation or the Workmen's Compensation Appeal Board".[16]

Section 841 of the Worker's Disability Compensation Act (see fn 9), providing that all questions concerning compensation and questions arising under *that act* shall be determined "by the bureau", does not provide a procedure (within the meaning of § 64 of the APA[17]) for challenging or determining the validity or applicability of a rule promulgated by the director.

We conclude that § 841 does not relieve the bureau of complying with chapter 3 of the APA when issuing policy declarations and statements within the APA's definition of a rule, and that the review provisions of that chapter also apply to a rule promulgated by the bureau.

### III

### A

The APA states that a rule is "an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency". Excluded are "[a] rule or order establishing or fixing rates or tariffs," "an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the

---

reference "in any other law" to the earlier APA is deemed to be a reference to the present APA (MCL 24.312; MSA 3.560[212]).

16 MCL 24.315; MSA 3.560(215).

17 "Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment * * *." MCL 24.264; MSA 3.560(164).

force and effect of law but is merely explanatory".[18]

We need not consider whether the letters are, as the director asserts, within the "interpretive statement" exception to the general definition of a rule,[19] since we hold that implicit in the definition of "rule" is the concept of agency exercise of discretion.

*Jolliff* had determined that certain increases in benefits were payable. It was the director's apparent understanding of *Jolliff,* possibly on the advice of the Attorney General, that it applied in death cases and retroactively. By the letters the director made the following statements: i) the rates were required by the act as construed by the Court; ii) carriers and employers should make payment in accordance with the schedules; and, iii) implicitly, that he would seek to enforce that interpretation.

---

[18] " 'Rule' means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:

\* \* \*

"(c) A rule or order establishing or fixing rates or tariffs.

\* \* \*

"(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory." MCL 24.207; MSA 3.560(107).

[19] The plaintiffs claim that the director asserts the applicability of the exception for interpretive statements for the first time on the appeal to this Court.

While we express no view regarding the proper construction of this exception, we note that a statement is not a "rule" unless it implements or applies *"law* enforced or administered by the agency." (Emphasis supplied.) A "law" is a statute, not a rule of law enunciated by a court. Since the exception for "an interpretive statement" relates to a statement which otherwise would be a rule, were we to reach the question whether the letters and attached schedules are interpretive statements we would be faced with the question whether an interpretation of a judicial opinion, which cannot be a rule, may be an interpretive statement.

When an appellate court construes a statute and the agency is bound by that construction, it is the court, not the agency, which has exercised choice and discretion although the agency seeks to enforce that construction. The agency has not expressed a policy of general applicability in the exercise of discretion in the application or implementation of law enforced or administered by it.

The asserted rule in the instant case is the director's apparent understanding, expressed by the letters and schedules, that *Jolliff* required an increase in the minimum death benefits and was retroactive. There can be but one correct interpretation of *Jolliff*. The letters sought to inform insurers and employers of what the director thought the decision required. He did not purport to be conveying his own construction of the act but, rather, to be implementing the Court's construction.

The letters did not purport to announce an *agency* implementation or application of the act. The director merely announced what he understood to be the *judicial* construction of the act.

To be sure, the letters extended the *Jolliff* holding to facts not there presented. This was done, however, in the apparent belief that *Jolliff* required that extension and was not done in the exercise of the policy-making authority of the agency. Because the letters were not a product of agency exercise of discretion and policy-making authority, they did not set forth rules.

It is one thing for an agency to invoke one or more judicial decisions in *its own* construction of a statute and quite another for it merely to state its understanding of *the court's* construction of a statute.

There is no reason to suppose that the director's

letters, following closely upon the *Jolliff* decision, represented an attempt to promulgate an agency policy to expand that decision in the guise of a statement of the director's understanding of it. The director's approach may have been simplistic but there is no reason to doubt the sincerity of his expressed view that the Court's decision mandated his action.[20]

If there was reason to believe that the director's action was other than it purported to be and in actuality represented a conscious choice (an exercise of discretion) by the agency to extend the decision, a different question would be presented, as then it would be necessary to decide whether the letters were something other than they appeared to be. Similarly, the judicial role might be different if the letters had a substantial and immediate impact on insurance companies.[21]

B

The insurers and employers in this case were not, contrary to plaintiffs' contentions, substan-

_____

[20] The Worker's Disability Compensation Act does not delegate authority to the director to declare law concerning compensation rates. It leaves no room for the exercise of discretion in determining weekly compensation rates for total or partial disability and death benefits. Each section sets out legislatively prescribed rates which are subject to change, if at all, only in accordance with a legislatively prescribed formula which involves little more than a simple mathematical computation.

[21] When an agency makes a policy decision which has a substantial and immediate effect on lives or businesses, the inquiry is not limited to whether the policy statement has the force of law. See *Lewis-Mota v Secretary of Labor,* 469 F2d 478 (CA 2, 1972) (change in agency policy concerning granting visas to aliens with certain pre-certified occupations); *Pharmaceutical Manufacturers Ass'n v Finch,* 307 F Supp 858 (D Del, 1970) (Food and Drug Administration [FDA] changed its policy concerning types of proofs acceptable as supporting a finding of drug effectiveness); *Spring Mills, Inc v Consumer Product Safety Comm,* 434 F Supp 416 (D SC, 1977) (FDA declared a flame retardant a "banned hazardous substance").

tially and immediately affected by the director's statements. If they chose not to comply, their businesses would not be embarrassed or impeded but could continue as before while a determination was made whether they need comply. No immediate change in internal operating procedures was required, no relationship with any customer was affected, no advantage was bestowed on one insurer or employer as compared to another that could only be overcome, if at all, by recourse to the courts or other strenuous measures.

An injured worker or dependent might commence proceedings seeking compliance with the *Jolliff* decision as interpreted by the director. The director on his own might initiate such proceedings.[22] A hearing referee and the WCAB would, following adversary presentation, determine whether the director's interpretation was correct. The WCAB decision would be appealable to the Court of Appeals and this Court. The only consequence of a failure to comply with the rate schedules attached to the director's letters would be that the insurer or employer might be subjected to such adversary proceedings. The act provides no sanctions or penalties for non-compliance with the director's rate schedules.

Even if the director had never publicly announced a view concerning minimum compensation rates required to comply with *Jolliff,* he would still have possessed authority to institute compliance proceedings if he believed that the requirements of the act, as construed in *Jolliff,* had not been observed. The director's announcement of his interpretation of *Jolliff* in no way expanded his authority to institute compliance proceedings. His announcement, indeed, may have limited his abil-

---

[22] 1970-1971 AACS R 408.35.

ity to institute compliance proceedings because he
is arguably limited by his own declarations.[23]

## IV

The majority reaches the same result as we on
the ground that the letters were "interpretive
statements". We have indicated (see Part III A,
*supra)* that there is no need to consider whether
the letters are within that exception to the general
definition of a rule. Also, this exception appears to
have been advanced by the director for the first
time on appeal to this Court.[24]

In reaching its conclusion, the majority cites
authorities which it states "suggest" that in Michi-
gan a "rule" is "a reasonable exercise of *legisla-
tively delegated* power, *pursuant to proper proce-
dure".* (Emphasis supplied.) The majority opinion
points out that "the director never took the *proce-
dural steps* necessary to the formulation of a rule
under our act". (Emphasis supplied.) The implica-
tion is that what might otherwise be a rule within
the definition of the APA is not a rule if the
agency exceeds its legislatively delegated power or
fails to comply with the notice and comment provi-
sions of the act.

The Legislature did not intend that the policy,
scope and requirements of the act be so easily
circumvented. Agency pronouncements within the
definition of a rule may have the practical force

[23] *United States v Heffner,* 420 F2d 809, 812 (CA 4, 1969); *United
States v Leahey,* 434 F2d 7 (CA 1, 1970); *United States v Sourapas,*
515 F2d 295 (CA 9, 1975).

Davis, Administrative Law Treatise, Administrative Law of the
Seventies (1977 Cum Supp), § 5.03-5, p 54. See, also, 1 Cooper, State
Administrative Law, p 266.

See, also, Note, *Violations by Agencies of Their Own Regulations,*
87 Harv L Rev 629 (1974).

[24] See fn 19, *supra.*

and effect of a rule although the agency has not observed the notice and comment requirements of the APA.[25]

Williams, J., concurred with Levin, J.

---

[25] See fn 21, *supra*.