FAIRCLOTH v FAMILY INDEPENDENCE AGENCY

Docket No. 198222. Submitted June 11, 1998, at Detroit. Decided October
30, 1998, at 9:10 A.M.

Mary Faircloth and other former recipients of welfare benefits under
the general assistance program administered by the Department of
Social Services, now the Family Independence Agency, from 1979
until fiscal year 1991-92 brought an action in the Ingham Circuit
Court against the department and others, seeking certification of a
class action and declaratory and injunctive relief, alleging that the
defendants' policy for determining eligibility for benefits under the
state disability assistance (SDA) program that replaced the general
assistance program violated the appropriations acts regarding such
benefits for fiscal years 1991-92 and 1992-93, 1991 PA 111 and 1992
PA 168. The appropriations acts provided that a person who is
medically diagnosed as incapacitated and unavailable for work for
at least ninety days was eligible to receive SDA benefits. The defend-
ants' policy provided that clients are medically eligible for SDA if
they are medically eligible for medical assistance based on disabil-
ity or blindness or if they have a physical or mental impairment or
combination of impairments that prevent the performance of any
remunerative work for ninety days or more. The policy defined
work as any work or work activity usually done for remuneration.
The plaintiffs alleged that the policy was invalid because the inter-
nal criteria for determining eligibility under 1991 PA 111, subsec-
tion 805(1)(b) and 1992 PA 168, subsection 805(1)(b) was not
promulgated as a rule under the Administrative Procedures Act
(APA) and the policy excluded applicants who fell within the scope
of subsection 805(1)(b). The court, Carolyn Stell, J., denied, with-
out prejudice, the motion to certify a class. On June 8, 1994, the
court granted partial summary disposition for the plaintiffs, declar-
ing the defendants' policy invalid and violative of the APA and the
SDA appropriations acts. The court took under advisement the issue
whether to grant further relief, but certified its declaratory ruling
as final for purposes of appeal. The court then considered the
plaintiffs' motion for postjudgment supplemental relief and ruled
that it would use its general power to fashion a specific remedy to
enforce its declaratory judgment. The court, as part of the remedy,

ordered the defendants to determine eligibility by means of the disability standard used for purposes of the supplemental security income (SSI) provisions of the Social Security Act, 42 USC 1382 *et seq*. The defendants appealed, and the Court of Appeals stayed further proceedings pending resolution of the appeal.

The Court of Appeals *held*:

1. The Court of Appeals has jurisdiction to consider the defendants' challenge to the June 8, 1994, order on defendants' appeal as of right from the subsequent final order that disposed of all of the plaintiffs' claims.

2. The court erred in finding that the policy constituted a rule that should have been promulgated under the APA. The policy is an interpretive statement because it merely explained the language of the appropriations acts. Where an agency policy interprets or explains a statute or rule, the agency need not promulgate the policy as a rule even if the policy has a substantial effect on the rights of a class of people, because an interpretive statement is not, by definition, a rule under the APA.

3. The defendants' policy does not constitute a rule because it does not have the force and effect of law, but rather merely explains the appropriations acts by detailing the circumstances under which a person will be deemed unavailable for work for at least ninety days. The court erred in holding the policy invalid because it was not promulgated as a rule under the APA.

4. The court erred in determining that the policy conflicted with the language of the appropriations acts.

5. The plaintiffs' argument that since a person who receives SSI, social security, or medical assistance because of a disability qualifies for SDA benefits under subsection 805(1)(a) of the appropriations acts, the Legislature must have intended a lesser standard to qualify under subsection 805(1)(b) than that used for purposes of determining SSI benefits must be rejected.

6. The plaintiffs' argument that the remaining subsections of subsection 805(1) evince the Legislature's intent that subsection 805(1)(b) encompass applicants who are capable of performing some work, but cannot meet their basic needs because of their disability must also be rejected. The Court of Appeals will not apply the disability standards applicable to persons falling within the other subsections to persons who can only qualify for benefits under subsection 805(1)(b).

7. The language of the appropriations acts does not create a "significantly" or "substantially" incapacitated standard.

8. The Legislature chose not to include in subsection 805(1)(b) language calling for consideration of vocational factors such as age, education, and previous work experience. Therefore, for purposes of subsection 805(1)(b), an applicant's capacity to work is not measured by a minimum number of hours that the applicant is able to sustain work activity or a minimum remunerative standard. The defendants correctly interpreted subsection 805(1)(b) as requiring an inability to perform any work.

9. The Legislature's inclusion in 1992 PA 168, subsection 805(1)(b) of the same language used in 1991 PA 111, subsection 805(1)(b) was an approval of the defendants' interpretation of 1991 PA 111, subsection 805(1) as requiring that a claimant be incapable of any remunerative work. The Legislature's decision to modify subsection 805(1)(b) and mandate the use of the SSI standard during fiscal year 1993-94, 1993 PA 186, subsection 805(1)(b) was not a rejection of the defendants' use of the more restrictive standard in 1991-92 and 1992-93. The matter must be reversed and remanded for entry of a judgment for the defendants.

Reversed and remanded.

CAVANAGH, J., dissenting in part, stated that the defendants' interpretation of 1991 PA 111, subsection 805(1)(b) resulted in an unjustifiably restrictive standard of eligibility for disability benefits that was contrary to the intent of the Legislature. The defendants' interpretation leads to unreasonable and unjust results. The remaining subsections of subsection 805(1) support a broader reading of the disability standard contained in subsection 805(1)(b). The Legislature's reenactment of 1991 PA 111, subsection 805(1)(b) in 1992 PA 168, subsection 805(1)(b) is not a dispositive indicator of the Legislature's intent to approve the defendants' interpretation of 1991 PA 111, subsection 805(1)(b). The grant of summary disposition in favor of the plaintiffs should be affirmed.

1. COURTS — JURISDICTION — MOTIONS AND ORDERS — APPEAL.

The Court of Appeals has jurisdiction in an appeal as of right from a trial court's final order disposing of all the claims in a case to consider a party's challenge to a prior order in the case granting partial summary disposition that was not a final order; an order granting partial summary disposition is not a final order if it provides that the trial court will conduct further proceedings to determine whether further relief should be granted with regard to the claims for which summary disposition is being granted.

2. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — RULE — INTERPRETIVE STATEMENTS.

A "rule" for purposes of the rule-promulgation requirements of the Administrative Procedures Act does not include a form with instructions, an interpretive statement, a guideline, an informal pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory; an agency policy that does not have the force and effect of law but merely interprets or explains a statute or rule need not be promulgated as a rule even if it has substantial effect on the rights of a class of people (MCL 24.207[h]; MSA 3.560[107][h]).

3. SOCIAL SERVICES — DISABILITY ASSISTANCE PROGRAM — BENEFITS — ELIGIBILITY.

The Legislature's use of the terms "incapacitated," "unavailable," and "work" in the subsection of the social services appropriations acts for fiscal years 1991-92 and 1992-93 that states that a "person who is medically diagnosed as incapacitated and unavailable for work for at least 90 days" is eligible for state disability assistance program benefits indicates that factors such as age, education, and previous work experience are not to be considered under the subsection and that an applicant's capacity to work is not to be measured by the minimum number of hours that the applicant is able to sustain work activity or a minimum remunerative standard; the subsection requires an applicant to be unable to perform any remunerative work in order to be eligible for the benefits (1991 PA 111, subsection 805[1][b], 1992 PA 168, subsection 805[1][b]).

4. STATUTES — ADMINISTRATIVE LAW — AGENCY'S CONSTRUCTION OF STATUTES.

The Legislature is presumed to know of an agency's construction of a statute and adopts that construction when it reenacts the language so construed.

Michigan Legal Services (by *Susan McParland* and *Marilyn Mullane*), for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Susan A. Harris* and *Stephen H. Garrard*, Assistant Attorneys General, for the defendants.

Before: CORRIGAN, C.J., and CAVANAGH and BANDSTRA, JJ.

CORRIGAN, C.J. In this action challenging the standard for considering applications for state disability assistance program (SDA) benefits during fiscal years 1991-92 and 1992-93, defendants appeal by right the order granting plaintiffs supplemental relief. The trial court found defendants' policy regarding SDA eligibility invalid because it constituted a rule that should have been promulgated under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.* It also determined that defendants' policy violated the plain meaning of the appropriations acts for fiscal years 1991-92 and 1992-93, 1991 PA 111 and 1992 PA 168. We hold that the policy regarding SDA eligibility was an interpretive statement that need not have been promulgated as a rule under the APA and that defendants correctly construed the language of the appropriations acts. We therefore reverse and remand for entry of judgment for defendants.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

The state provided welfare benefits under a general assistance program (GA) administered by the Department of Social Services[1] (DSS) from 1979 until fiscal year 1991-92. The program was not a permanent statutory enactment, but rather was contingent on the Legislature appropriating funds for the program in a line item of the DSS budget. MCL 400.14; MSA 16.414, MCL 400.18; MSA 16.418. The Legislature thus eliminated GA in 1991 by not appropriating funds for the program in the DSS budget for fiscal year 1991-92. In its place, the Legislature established the SDA program

---

[1] In 1995, the Legislature abolished the DSS effective March 28, 1996, and transferred its duties to the newly created Family Independence Agency. MCL 400.1 *et seq.*; MSA 16.401 *et seq.*

to provide assistance to some former GA recipients. 1991 PA 111, § 805.

1991 PA 111, § 805 provided in pertinent part as follows:

> (1) The department of social services shall operate a state disability assistance program. Persons eligible for this program shall include needy persons 18 years of age or older, or emancipated minors, who meet 1 or more of the following requirements:
>
> (a) A recipient of supplemental security income, social security, or medical assistance due to disability.
>
> (b) A person who is medically diagnosed as incapacitated and unavailable for work for at least 90 days.
>
> (c) A resident of adult foster care, home for the aged, county infirmary or substance abuse treatment center.
>
> (d) A person receiving 30-day postresidential substance abuse treatment.
>
> (e) A person diagnosed as having acquired immune-deficiency syndrome or acquired immune-deficiency syndrome related complex.
>
> (f) A person receiving special education services through the local intermediate school district.
>
> (g) A pregnant woman.
>
> (h) A caretaker of a disabled person as defined in subsections (a), (b), (e), or (f) above.

Contemporaneous with the legislative action, defendants developed a policy for determining eligibility under subsection 805(1)(b). The policy provided as follows under the heading "Standard for Determining Disability":

> Clients are medically eligible for State Disability Assistance if they are medically eligible for MA [medical assistance] based on disability or blindness or if they have a physical and/or mental impairment or combination of

impairments which prevents the performance of any remu-
nerative work for 90 days or more.

The policy further defined the term "work" as "[a]ny
work or work activity usually done for remuneration."
Defendants continued the policy during fiscal year
1992-93 because the Legislature included identical
language in subsection 805(1)(b) of that year's appro-
priations act. 1992 PA 168, subsection 805(1)(b). The
Legislature, however, modified the language of sub-
section 805(1)(b) for fiscal year 1993-94 to provide
benefits for "[a] person with a physical or mental
impairment other than substance abuse which meets
federal SSI disability standards, except that the mini-
mum duration of the disability shall be 90 days." 1993
PA 186, subsection 805(1)(b). Accordingly, defendants
discontinued the policy for determining disability
under subsection 805(1)(b).

In February 1992, in response to defendants' imple-
mentation of the policy, plaintiffs, former recipients
of assistance under the GA program, commenced this
action seeking certification of a class action and
declaratory and injunctive relief. Plaintiffs alleged
that defendants' policy was invalid because the inter-
nal criteria for determining eligibility under subsec-
tion 805(1)(b) was not promulgated as a rule under
the APA and the policy excluded applicants who fell
within the scope of subsection 805(1)(b). The trial
court subsequently denied, without prejudice, plain-
tiffs' motion to certify a class.

Defendants and plaintiffs filed cross-motions for
summary disposition of plaintiffs' claims under MCR
2.116(C)(10) in March 1993. The trial court granted
partial summary disposition for plaintiffs on June 8,

1994, declaring defendants' policy invalid and violative of the APA and the SDA appropriations acts. The court reasoned as follows:

> The policy for determining eligibility for SDA benefits—and this is a finding of the Court—is a rule, and should have been promulgated as a rule under the Michigan Administrative Procedures Act.
>
> The interpretive statement exception has been narrowly construed by the courts, and requires that a statement be merely be [sic] explanatory.
>
> This policy goes beyond explanatory. It essentially eliminated the medically diagnosed requirement altogether and went on to offer a restricted definition of incapacitated, as an impairment which prevents the performance of any remunerative work for 90 days or more. The plain meaning of incapacitated would certainly encompass more than this.
>
> The policy in question had the full force and effect of law, and was used to determine whether a person was eligible for SDA benefits.
>
> The preferred method of policy making is through the process of promulgation of rules. This policy clearly affected the status quo, and those affected by it should have been given an opportunity to be heard.
>
> The Court also finds that the argument that this is somehow an exception to the Administrative Procedures Act because it falls underneath the—a broad boilerplate language of the Social Services Act, is also not adopted by the Court.
>
> Therefore, the Court grants summary disposition to the Plaintiffs on Counts 12, 17, 18, and 21, finding that the definition as applied was violative of the Michigan Administrative Procedures Act and also in violation of the authorizing statute.

The court took under advisement the issue whether to grant further relief, but certified its declaratory rulings as "final" for purposes of appeal.

In April 1995, plaintiffs moved for postjudgment supplemental relief under MCR 2.605(F), arguing that because defendants had improperly denied benefits to seventy-five percent of applicants, defendants must notify previously rejected applicants and determine their eligibility under an appropriate standard. Plaintiffs urged the court to use its general power to fashion relief to grant them the additional relief necessary to give effect to the declaratory judgment because defendants had not sought to implement the court's decision. Plaintiffs further argued that the court should direct that defendants determine eligibility by means of the disability standard used for purposes of the supplemental security income (SSI) provisions of the Social Security Act, 42 USC 1382 *et seq.*

The trial court took the motion under advisement after a hearing in July 1995. Nine months later, the court ruled that it would use its general power to fashion a specific remedy to enforce its declaratory judgment. Noting that defendants had not developed an alternate standard for determining disability, the court directed that they use the SSI standard because it was the only "coherent" standard, it reasonably effectuated the Legislature's intent, and defendants had expertise in using it. Next, the court recognized that personal notice to all rejected applicants was impractical, but concluded that defendants could provide reasonable notice through the mass media and the inclusion of written materials in food stamp mailings. Therefore, the court ordered that defendants (1) include written notices and application forms in food stamp mailings during August 1996, (2) air public service announcements in the top seven television markets not less than five times in prime time during the

first two weeks of August 1996, (3) air the announcements in the top ten radio markets not less than five times during working hours in the first two weeks of August 1996, and (4) use the SSI standard to review applications. The court then dismissed plaintiffs' remaining claims as moot.

Defendants moved for reconsideration, requesting that the court amend its order to allow them to send a preapplication to all food stamp recipients in a separate mailing, which applicants could then present to the Family Independence Agency (FIA) for a full application. Defendants further requested that the court reconsider the method of providing notice because radio and television stations would not agree to air the public service announcements during the court-ordered period and some television stations would not sell air time for the announcements. The court denied defendants' motion for reconsideration, but extended the period for defendants to notify rejected applicants and redetermine eligibility and shifted the public service announcements to the first two weeks of November 1996. This Court, however, stayed further proceedings pending resolution of this appeal.

II. JURISDICTION

We reject plaintiffs' initial contention that this Court lacks jurisdiction over the trial court's June 8, 1994, order granting partial summary disposition because defendants did not timely claim an appeal from that order. The trial court certified its order granting partial summary disposition as a "final judg-

ment" under the former version of MCR 2.604(A).[2]
Mere certification, however, does not resolve whether
an order is actually "final." *McCarthy & Associates,
Inc v Washburn*, 194 Mich App 676, 680; 488 NW2d
785 (1992). If the order is not final, this Court lacks
jurisdiction under MCR 7.203. *Id.* In this case, the
June 8, 1994, order was not a final order because it
explicitly provided that additional proceedings would
occur regarding whether the trial court would grant
further relief on the claims with respect to which it
had granted summary disposition. See *Children's
Hosp v Auto Club Ins Ass'n*, 450 Mich 670, 677; 545
NW2d 592 (1996). Accordingly, this Court has juris-
diction to consider defendants' challenge to the June
8, 1994, order on defendants' appeal of right from the
actual final order entered on April 30, 1996, which
disposed of all of plaintiffs' claims.[3]

### III. THE APA

Defendants argue that the trial court erred in find-
ing their policy invalid because it was not promul-
gated as a rule under the APA. We agree. We review
this question of law de novo. *Watson v Bureau of*

---

[2] The Michigan Supreme Court amended the court rule to eliminate this procedure in May 1995, effective July 1995. The current version of MCR 2.604 only permits certification of an otherwise nonfinal order as a final order in receivership and other similar actions.

[3] Defendants improperly rely on *Comm'r of Ins v Advisory Board of the Michigan State Accident Fund*, 173 Mich App 566; 434 NW2d 433 (1988), for the proposition that they may either appeal by right from an order certified as final or wait until the final judgment to challenge that order. This Court has repudiated the *Accident Fund* interpretation of this Court's jurisdiction under MCR 7.203. *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 8; 497 NW2d 514 (1993); *Klco v Dynamic Training Corp*, 192 Mich App 39, 41; 480 NW2d 596 (1991).

*State Lottery,* 224 Mich App 639, 644; 569 NW2d 878 (1997).

The FIA is subject to the rule-promulgation requirements of the APA.[4] See *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Services,* 431 Mich 172, 183; 428 NW2d 335 (1988). "The APA requires an agency to give notice of proposed rules or rule changes, to hold a public hearing, and to submit the proposed rule or rule changes to the Legislature's Joint Committee on Administrative Rules for review and approval." *AFSCME v Dep't of Mental Health,* 452 Mich 1, 9, n 8; 550 NW2d 190 (1996). An agency's failure to follow this process renders the rule invalid.[5] *Clonlara, Inc v State Bd of Ed,* 442 Mich 230, 239; 501 NW2d 88 (1993); *Blank v Dep't of Corrections,* 222 Mich App 385, 392; 564 NW2d 130 (1997), lv gtd 459 Mich 878 (1998).

---

[4] MCL 400.6(1); MSA 16.406(1) grants the FIA the power to promulgate "rules necessary or desirable for the administration of programs under [the Social Welfare Act]." Under MCL 400.1b(1); MSA 16.401(2)(1), the annual appropriations acts involved in this case are considered "as a time-limited addendum to th[e] act." Therefore, the FIA and its predecessor, the DSS, had the power to promulgate rules to administer the SDA program.

[5] We reject defendants' contention that under *Blank v Dep't of Corrections,* 222 Mich App 385, 392; 564 NW2d 130 (1997), lv gtd 459 Mich 878 (1998), the trial court erred in concluding that they violated the APA. In *Blank, supra* at 392-401, this Court held that §§ 45 and 46 of the APA, MCL 24.245; MSA 3.560(145), MCL 24.246; MSA 3.560(146), requiring legislative approval for agency rules, are unconstitutional. This Court, however, found the remaining portion of the APA enforceable because §§ 45 and 46 could be severed from the APA without interfering with the valid object of the act. *Blank, supra* at 401-402. In this case, defendants did not comply with any of the requirements for promulgating rules, not merely the provisions held unconstitutional in *Blank.* Accordingly, *Blank* is not controlling. In the event defendants' policy constituted a rule, it is invalid for failure to comply with those APA rule-promulgation procedures that survived *Blank.* See *Clonlara, Inc v State Bd of Ed,* 442 Mich 230, 239; 501 NW2d 88 (1993).

In *AFSCME, supra* at 8, our Supreme Court parsed the APA definition of a "rule," MCL 24.207;   MSA 3.560(107):

> [A] "rule" is: (1) "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability," (2) "that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency . . . ."

The statute further provides, however, that a "rule" does not include, among other enumerated exceptions, "[a] form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h); MSA 3.560(107)(h).[6]

We conclude that defendants' policy was an interpretive statement, not a rule subject to the promulgation requirements of the APA, because it merely explained the language of the appropriations acts. We reject plaintiffs' argument that the policy constituted a rule because it altered the status quo and substantially affected the rights of the general public.

---

[6] Plaintiffs do not argue that defendants' policy was a "guideline" for purposes of the APA. A guideline is "an agency statement or declaration of policy which the agency intends to follow, which does not have the force or effect of law, and which binds the agency but does not bind any other person." MCL 24.203(6);   MSA 3.560(103)(6). To promulgate a guideline, the agency must provide notice to the joint committee, the Legislative Service Bureau, the Governor and "each person who requested the agency in writing for advanced notice of proposed action which may affect the person," and provide a sixty-day period for written comment. MCL 24.224(1); MSA 3.560(124)(1). Plaintiffs, however, have abandoned the issue whether defendants' policy is invalid because it was not promulgated as a guideline by not raising it on appeal. See *Phinney v Perlmutter*, 222 Mich App 513, 544; 564 NW2d 532 (1997), and *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 172; 568 NW2d 365 (1997).

Although our Supreme Court has suggested in dicta that the effect a policy has on the rights of the public may require its promulgation as a rule, see *Michigan Farm Bureau v Bureau of Workmen's Compensation*, 408 Mich 141, 150, n 4; 289 NW2d 699 (1980); *Detroit Base Coalition, supra* at 184-185; *Clonlara, supra* at 247-248, Michigan courts have focused on the effect of an unpromulgated policy only where the agency establishes policies and procedures under a broad grant of authority to administer a program. See, e.g., *AFSCME, supra,* and *Palozolo v Dep't of Social Services,* 189 Mich App 530; 473 NW2d 765 (1991). Under those circumstances, the agency policies may have the force and effect of law because the relevant statute does not provide specific standards for eligibility and administration of the program. The policies are not interpretive statements because they do not merely interpret or explain the statute or rules from which the agency derives its authority. Rather, they establish the substantive standards implementing the program. See *Boyd v Civil Service Comm*, 220 Mich App 226, 236; 559 NW2d 342 (1996). By contrast, where an agency policy interprets or explains a statute or rule, the agency need not promulgate it as a rule even if it has a substantial effect on the rights of a class of people because an interpretive statement is not, by definition, a rule under the APA. *Michigan Farm Bureau, supra* at 148.

Before 1991, the Legislature appropriated monies to fund a GA program administered by the DSS in accordance with DSS rules and procedures. MCL 400.14; MSA 16.414, MCL 400.18; MSA 16.418. The Legislature did not dictate who was eligible for the program. See, e.g., 1990 PA 200. In funding the SDA program, how-

ever, the Legislature established who was eligible for benefits. 1991 PA 111, subsection 805(1)(b) and 1992 PA 168, subsection 805(1)(b) provided that a "person who [was] medically diagnosed as incapacitated and unavailable for work for at least 90 days" was eligible to receive benefits. Thus, unlike the policies at issue in *AFSCME, supra,* and *Palozolo, supra,* defendants' policy does not have the force of law because subsection 805(1)(b) governs eligibility and it remains the court's responsibility to determine the meaning of the language contained therein. See *Dep't of Civil Rights ex rel Parks v General Motors Corp,* 93 Mich App 366, 373-374; 287 NW2d 240 (1979), adopted by a plurality of the Michigan Supreme Court as its opinion 412 Mich 610; 317 NW2d 16 (1982). The court need only give appropriate deference to defendants' interpretation.[7] *General Motors Corp, supra,* 93 Mich App 374, n 5. Accordingly, defendants' policy does not constitute a rule because it does not have the force and effect of law, but rather merely explains the statutory provision by detailing the circumstances under which a person will be deemed "unavailable for work for at least 90 days."

Plaintiffs further mistakenly argue that defendants were required to promulgate their policy as a rule because it conflicted with the provision of the appropriations acts that it purportedly explained. Even assuming, arguendo, that the policy is more restric-

---

[7] By contrast, this Court applies a three-part test to determine the validity of an agency's rules. The rules must be within the matter covered by the enabling statute, must comply with the underlying legislative intent, and must not be arbitrary or capricious. *Luttrell v Dep't of Corrections,* 421 Mich 93, 100; 365 NW2d 74 (1984); *Binsfeld v Dep't of Natural Resources,* 173 Mich App 779, 785-786; 434 NW2d 245 (1988).

tive than the statutory provisions, this factor is of no consequence. Our Supreme Court rejected plaintiffs' argument in *Clonlara, supra* at 243, quoting *Wayne Twp Metropolitan School Dist v Davila*, 969 F2d 485, 494 (CA 7, 1992):

> An interpretation not supported by the enabling act is an invalid interpretation, not a rule. Otherwise, "wrong" interpretive statements might become rules with the force of law on the false premise that they were promulgated in accordance with the APA procedures. "[B]ecause a reviewing court disagrees with an agency interpretation does not render it legislative."

Therefore, we conclude that that trial court erred in holding that defendants' policy was invalid because it was not promulgated as a rule under the APA.

#### IV. SUBSECTION 805(1)(B) OF THE APPROPRIATIONS ACTS

Defendants next argue that the trial court erred in determining that their policy conflicted with the language of the appropriations acts. We agree. This Court reviews questions of law, including statutory interpretation, de novo. *Watson, supra* at 644. Although it remains our responsibility to determine the meaning of the statute, we give "appropriate deference" to the agency's interpretation. See *General Motors Corp, supra*, 93 Mich App 373-374. This Court ordinarily defers to the construction of a statute by the agency charged with applying it unless the interpretation is "clearly wrong." *Jones-Jennings v Hutzel Hosp (On Remand)*, 223 Mich App 94, 105; 565 NW2d 680 (1997).

## A. STATUTORY CONSTRUCTION

In construing a statute, our purpose is to ascertain the reasonable meaning of the specific language of the statute. Cf. *Gross v General Motors Corp*, 448 Mich 147, 158-159; 528 NW2d 707 (1995); *Mahrle v Danke*, 216 Mich App 343, 348; 549 NW2d 56 (1996); see, generally, Scalia, A Matter of Interpretation: Federal Courts & the Law (Princeton, NJ: Princeton University Press, 1997), pp 23-25. Judicial construction is not permitted where the plain and ordinary meaning of the statutory language is clear. *Ruff v Isaac*, 226 Mich App 1, 8; 573 NW2d 55 (1997); *Watson, supra* at 644.

In this case, the trial court erred in concluding that defendants' policy violated the plain meaning of the appropriations acts. Defendants' policy interpreted 1991 PA 111, subsection 805(1)(b) and 1992 PA 168, subsection 805(1)(b), which provided that a "person who [was] medically diagnosed as incapacitated and unavailable for work for at least 90 days" was eligible to receive SDA benefits. Defendants' policy explained this language under the heading "Standard for Determining Disability":

> Clients are medically eligible for State Disability Assistance if they are medically eligible for MA based on disability or blindness or if they have a physical and/or mental impairment or combination of impairments which prevents the performance of any remunerative work for 90 days or more.

The policy further defined the term "work" as "[a]ny work or work activity usually done for remuneration."

We reject plaintiffs' argument that since a person who receives SSI, social security, or medical assis-

tance because of a disability qualifies for SDA benefits under subsection 805(1)(a) of the appropriations acts, the Legislature must have intended a lesser standard to qualify under subsection 805(1)(b) than that used for purposes of determining SSI benefits. A person is disabled for SSI purposes if he is unable to engage in "substantial gainful activity" by reason of an impairment "which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 USC 1382c(a)(3)(A). The Legislature, however, could reasonably have decided to authorize benefits for someone who is unable to sustain gainful employment for twelve months because of a disability, subsection 805(1)(a), but require a higher threshold for those whose disability incapacitates them for less than a year, subsection 805(1)(b). For example, the Legislature could have reasoned that a person who is incapacitated for less than a year may be able to borrow funds to support himself and pay off the debt after resuming gainful employment. Further, the Legislature could have used the SSI standard in subsection 805(1)(b) if it intended to measure incapacity by a gainful-employment standard. We will not assume that the Legislature inadvertently omitted from subsection 805(1)(b) the requirements subsumed under subsection 805(1)(a), and then on the basis of that assumption, apply those requirements to subsection 805(1)(b). See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

We likewise reject plaintiffs' contention that the remaining subsections of subsection 805(1) of the appropriations acts evince the Legislature's intent that subsection 805(1)(b) encompass applicants who are capable of performing some work, but cannot meet

their basic needs because of their disability. The remaining subsections apply to specific categories of people (persons receiving residential care, persons receiving substance abuse treatment, AIDS victims, special education students, pregnant women, and persons caring for a disabled person). Persons in these categories qualify for benefits even if they do not satisfy the requirements of subsection 805(1)(b). We will not, under the guise of construing the statutory language, disrupt the legislative scheme by applying the disability standards applicable to persons falling within the other subsections to persons who can only qualify for benefits under subsection 805(1)(b).

We also decline to construe the instant statutory language as creating a "significantly" or "substantially" incapacitated standard where the Legislature did not employ that language. It is well established that "[w]e eschew the insertion of words in statutes unless necessary to give intelligible meaning or to prevent absurdity, without regard to our own estimate of the wisdom of the legislation." *Great Lakes Steel Corp v Employment Security Comm*, 6 Mich App 656, 661-662; 150 NW2d 547 (1967), aff'd 381 Mich 249 (1968). Here, the Legislature has used these very adverbs in other statutes to signify something less than a total- or complete-impairment standard. See, e.g., MCL 257.39a; MSA 9.1839(1) (defining "permanent handicap" for purposes of the Michigan Vehicle Code), MCL 330.2001a(5); MSA 14.800(1001a)(5) (defining "mental illness" for purposes of chapter 10 of the Mental Health Code), MCL 440.2608(1); MSA 19.2608(1) (governing a buyer's right to revoke his acceptance of nonconforming goods under the Uniform Commercial Code), and MCL 257.1403(3)(a);

MSA 9.2705(3)(3)(a) (creating a presumption that a reasonable number of attempts have been made to repair a defect in a new motor vehicle for purposes of the Michigan lemon law). We will not, under the guise of interpreting the appropriations acts, write into the acts a provision that the Legislature has declined to enact. See *Autio v Proksch Constr Co*, 377 Mich 517, 524; 141 NW2d 81 (1966).

We further decline plaintiffs' invitation to follow the federal courts' construction of the Social Security Act when determining the reasonable meaning of the Michigan SDA provision. As plaintiffs correctly note, this Court, like the federal courts, would hold invalid agency rules that impose higher standards for disability than set forth in the act. See *Sullivan v Zebley*, 493 US 521; 110 S Ct 885; 107 L Ed 2d 967 (1990). Unlike the appropriations acts involved in this case, however, the Social Security Act explicitly grants SSI benefits to people who are unable to engage in "any substantial gainful activity." The act also mandates the consideration of vocational factors. 42 USC 1382c(a)(3). Like Congress in drafting the Social Security Act, our Legislature has evinced its intent that a determination of disability or incapacitation include the consideration of vocational factors by expressly so providing within the language of a statute. For instance, in the Worker's Disability Compensation Act, the Legislature defined the term "disability" as a "limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease." MCL 418.301(4); MSA 17.237(301)(4). This Court has also held that the Legislature signaled its intent to consider vocational fac-

tors in the Michigan no-fault act by using the phrase "physically or mentally incapacitated from earning" in the statutory provision regarding the determination of when the dependency of a person terminates for purposes of receiving survivor benefits. *Vovak v DAIIE*, 98 Mich App 81, 84-86; 296 NW2d 193 (1980), construing MCL 500.3110(3); MSA 24.13110(3). Given the Legislature's inclusion of language calling for consideration of vocational factors in other statutes, we can only conclude that the Legislature chose not to include similar statutory language in 1991 PA 111, subsection 805(1)(b) and 1992 PA 168, subsection 805(1)(b).

Thus, the trial court erred in holding that defendants' policy violated the plain meaning of the appropriations acts. Importantly, it is not for the courts to debate the wisdom or public policy of this legislation. *Nummer v Dep't of Treasury*, 448 Mich 534, 553, n 22; 533 NW2d 250 (1995); see *Ready-Power Co v Dearborn*, 336 Mich 519, 525; 58 NW2d 904 (1953). We do not do so here. Our function is to construe the language of the appropriations acts as it exists, not to legislate. *Morgan v Taylor*, 434 Mich 180, 192; 451 NW2d 852 (1990). Giving the terms "incapacitated," "unavailable," and "work" their common meanings, subsection 805(1)(b) does not take into account vocational factors such as age, education, and previous work experience. As such, an applicant's capacity to work for purposes of subsection 805(1)(b) is not measured by a minimum number of hours that he is able to sustain work activity or a minimum remunerative standard. Accordingly, defendants correctly interpreted subsection 805(1)(b) as requiring an inability to perform any work.

B. LEGISLATIVE APPROVAL OF DEFENDANTS' CONSTRUCTION

Even if we concluded that the language of the appropriations acts was ambiguous, we would defer to the agency's interpretation because the Legislature approved defendants' policy for determining eligibility under 1991 PA 111, subsection 805(1)(b) when it enacted 1992 PA 168, subsection 805(1)(b), which contained the identical language contained in 1991 PA 111, subsection 805(1)(b). While plaintiffs correctly note that a failed attempt to amend a statute is ordinarily not evidence of legislative approval of an agency's construction, see *Rogers v Detroit*, 457 Mich 125, 162-164; 579 NW2d 840 (1998) (TAYLOR, J. dissenting), the Legislature is presumed to know of the agency's construction of a statute and adopts such a construction when it reenacts the language so construed. See *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 30; 558 NW2d 444 (1996). Welfare legislation presents an unusual application of these principles because the Legislature must reestablish the SDA program each year by appropriating funds for the program in a line item of the FIA budget. See *Saxon v Dep't of Social Services*, 191 Mich App 689, 699-700; 479 NW2d 361 (1991). Thus, the Legislature's inclusion of the same language in subsection 805(1)(b) of 1992 PA 168 was not a failed attempt to amend an act, but, rather, constituted the reenactment of the language construed by defendants as requiring that a claimant be incapable of any remunerative work.

Plaintiffs mistakenly argue that the Legislature's decision to modify subsection 805(1)(b) and mandate the use of the SSI standard during fiscal year 1993-94, 1993 PA 186, signaled the disapproval of defendants'

policy for the prior two years. Although this Court can view an amendment enacted soon after a controversy regarding a statute has arisen as a legislative interpretation of the original act and, on that basis, give it retroactive effect, *Harper v Progressive Casualty Ins Co*, 79 Mich App 764, 768; 263 NW2d 1 (1977), we decline to do so here.[8] In light of the Legislature's decision to reenact subsection 805(1)(b) in the appropriations act for fiscal year 1992-93, we do not consider the Legislature's decision to adopt the SSI standard for 1993-94 as a rejection of defendants' use of the more restrictive standard in 1991-92 and 1992-93. Accordingly, the trial court erred in determining that defendants' policy violated the language of the appropriations acts because defendants correctly construed subsection 805(1)(b) and the Legislature approved that construction by reenacting subsection 805(1)(b) for fiscal year 1992-93. See *Jones-Jennings, supra* at 105; *Canterbury Health Care, supra* at 30. We therefore reverse and remand for entry of judgment for defendants.

In light of our determination that the trial court erred in declaring defendants' policy invalid, we do not address defendants' remaining arguments.[9]

Reversed and remanded. We do not retain jurisdiction.

BANDSTRA, J., concurred.

---

[8] The new subsection 805(1)(b) for fiscal year 1993-94 was not technically an amendment because the previous subsection 805(1)(b) expired at the end of fiscal year 1992-93.

[9] Defendants additionally argue that plaintiffs failed to exhaust their administrative remedies before initiating this action and that the trial court erred in granting plaintiffs supplemental relief.

CAVANAGH, J. (*concurring in part and dissenting in part*). I join in parts II and III of the majority opinion. I dissent from part IV, however, because I believe that defendants' interpretation of 1991 PA 111, subsection 805(1)(b) resulted in an unjustifiably restrictive standard of eligibility for disability benefits that was contrary to the intent of the Legislature.

Subsection 805(1)(b) provides that persons eligible for the state disability program include "[a] person who is medically diagnosed as incapacitated and unavailable for work for at least 90 days." To determine eligibility under this provision, the Department of Social Services (DSS) developed the following policy:

> Clients are medically eligible for State Disability Assistance if they are medically eligible for MA [medical assistance] based on disability or blindness or if they have a physical and/or mental impairment or combination of impairments which prevents the performance of any remunerative work for 90 days or more.

Defendants defined the term "work" as "[a]ny work or work activity usually done for remuneration."

General rules of statutory construction provide that if the plain and ordinary language of a statute is clear, judicial construction is neither necessary nor permitted. *Meyer Jewelry Co v Johnson*, 229 Mich App 177, 180; 581 NW2d 734 (1998). However, if a literal construction of a statute would produce unreasonable and unjust results inconsistent with the purpose of the statute, the court may depart from a literal construction. *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

I believe that defendants' interpretation of subsection 805(1)(b) leads to unreasonable and unjust results. Defendants contend that the terms "work," "employment," and "job" are not limited by such factors as the number of days and hours worked, the amount of wages received, or an individual's education and training. Hence, a person who is available to work one hour at a job that pays one dollar an hour during a ninety-day period is not entitled to benefits. Such a standard for entitlement can be met by few, if any, other than those who are hospitalized or suffer from a severe disability for the entire three- to twelve-month period.

Thus, according to defendants, the Legislature intended the following anomaly. Pursuant to 1991 PA 111, subsection 805(1)(a), a recipient of supplemental security income (SSI) is eligible for benefits. A person is disabled for SSI purposes if he is unable to engage in "substantial gainful activity" because of an impairment that lasts for one year or more. 42 USC 1382c(a)(3)(A). However, under 1991 PA 111, subsection 805(1)(b), a person who is disabled for more than ninety days but less than one year can receive benefits only if he is completely unable to perform any amount of work for any amount of compensation.

Furthermore, statutory provisions should be construed in light of other related provisions to carry out the purpose of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 209; 501 NW2d 76 (1993). The remaining subsections of subsection 805(1) support a broader reading of the disability standard contained in subsection 805(1)(b). 1991 PA 111 authorized benefits for people receiving thirty-day substance-abuse treatment, AIDS sufferers, recipients

of special education services, pregnant women, and caretakers of disabled persons. See subsections 805(1)(d)-(h). Undoubtedly some people in each of these categories can engage in some remunerative work, but may not be able to maintain sufficient employment to support themselves. Only those who are disabled for more than ninety days but less than one year are subject to the Draconian standard adopted by defendants.

In approving defendants' interpretation of the statute, the majority relies on the fact that the Legislature reenacted § 805 for the 1992-93 fiscal year, 1992 PA 168, despite the fact that the Legislature adopted the SSI standard for the 1993-94 fiscal year, 1993 PA 186. The rules of statutory construction provide that a longstanding, consistent administrative interpretation of a statute by those charged with its execution is entitled to considerable weight and ought not be overruled without cogent reasons. *Ludington Service Corp v Acting Comm'r of Ins*, 444 Mich 481, 490; 511 NW2d 661 (1994). However, defendants' interpretation of the legislative provision at issue is not longstanding and is therefore entitled to less weight. Given the realties of the legislative process, I do not find the single reenactment of subsection 805(1)(b) to be a dispositive indicator of the Legislature's intent.

I would affirm the trial court's grant of plaintiffs' motion for summary disposition.