*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARY LOYER and EILEEN LOYER,

        Plaintiffs-Appellants,

v

PAULA M. RINI,

        Defendant-Appellee.

UNPUBLISHED
January 17, 2025
9:14 AM

No. 367198
Oakland Circuit Court
LC No. 2017-158333-CZ

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

This is the second time that this case—which stems from a contentious boundary dispute between neighbors respecting an easement—is before this Court. In the first appeal, this Court vacated a portion of the trial court's judgment and remanded for further proceedings. See *Loyer v Rini*, unpublished per curiam opinion of the Court of Appeals, issued October 6, 2022 (Docket No. 356771), p 9. In this second appeal, plaintiffs, Cary Loyer and Eileen Loyer, contend that the trial court exceeded the scope of this Court's remand order. We agree, and accordingly vacate the trial court's judgment in part and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The pertinent facts of this case were set forth in this Court's first opinion as follows:

> The Loyers reside at Lot 021 and have lived there since 1984. When this action was filed, [defendant, Paula M. Rini,] was the sole owner of Lot 031 and resided there with her fiancé, Stephen Hudson. North of the Loyers' property and east of Rini's property is Lot 017. When this action was filed, Lot 017 was owned by Charles Murphy, but he subsequently conveyed the property to Rini and Hudson.

> At issue is an easement on Robert Castle Drive, a private road that runs from the Loyers' property north to Pontiac Lake Road, and is the only means of ingress (entry) and egress (exit) from Lot 021, which otherwise is landlocked. After Rini and Hudson began placing obstructions in the roadway that impeded the Loyers' access to their property, the Loyers filed this action to establish and enforce their

rights to use a 30-foot-wide easement on Robert Castle Drive for ingress and egress. The Loyers' complaint alleged that the owners of the properties immediately adjacent to the easement entered into a private road maintenance agreement, recorded in 1987, which memorialized "their rights and obligations" under the 30-foot-wide easement; the owners of Lot 031-Rini's predecessors in interest—did not join this agreement. The complaint also identified Rini's Lot 031 as the only other property at issue in the lawsuit.

Following a bench trial, the trial court held that the Loyers had a 30-foot-wide easement for ingress and egress, consistent with the recorded private road maintenance agreement: two adjacent 15-foot-wide easements, one running along the eastern border of Lot 031 and the other along the western border of Lot 017. In addition, the court found that the Loyers had an easement by prescription and acquiescence at the curved ends of the roadway, extending beyond the 30-foot width, as depicted in a survey prepared by GreenTech Engineering, Inc. [*Loyer*, unpub op at 3.]

Rini appealed, arguing that (1) the easement was not enforceable as to Lot 031 under the statute of frauds because there was no writing establishing the easement and (2) the trial court was not permitted to issue a ruling affecting Lot 017 because that lot was not subject to the litigation. *Id*. As to Rini's first argument, this Court explained that it could not determine whether the trial court's finding of an easement over Lot 031 ran afoul of the statute of frauds because the trial court did not adequately explain the legal basis for its finding of the easement. *Id*. at 3-6. This Court noted that the trial court's ruling referenced a private road maintenance agreement but observed that this agreement did not satisfy the statute of frauds with respect to Lot 031 because it was not signed by an owner of that lot. *Id*. at 5. Yet this was not dispositive, this Court explained, because the statute of frauds did not act as a bar to certain types of easements—such as easements by prescription or implication—so this Court remanded for the trial court to articulate "what legal theory supported the existence of a 30-foot-wide easement that included a 15-foot-wide easement over Lot 031." *Id*. at 5-6. Turning to Rini's argument related to Lot 017, this Court agreed with Rini that the trial court did not have jurisdiction to issue an opinion concerning that lot because the complaint did not identify Lot 017, Rini did not consent to Lot 017's inclusion in this action, and the Loyers never moved to amend their complaint. *Id*. at 6-8. At the end of the opinion, this Court summarized its holdings as follows:

We vacate the portion of the trial court's judgment awarding the Loyers an easement over a portion of Lot 017. We also vacate the portion of the trial court's judgment holding that the Loyers have an easement over a 15-foot-wide section of Lot 031 and remand for the trial court to sufficiently articulate the legal basis for finding this easement. [*Id*. at 9.]

In their brief on remand, after summarizing the history of the chain of title for Lot 031, the Loyers argued that the easement encumbering Lot 031 was created in 1978 when David and Salley Jean Beitler divided up their land and conveyed it to David Robert Carlson and Ruthann Dorothy Carlson. This was confirmed, according to the Loyers, not only by the 1978 deed but by "the undisputed testimony of both surveyor experts that testified at trial." The Loyers requested that

the court clarify that the 30-foot-wide easement over Lot 031 is an express easement as set forth in the 1978 deed from the Beitlers to the Carlson.[1]

In her brief on remand, Rini asserted that the trial court did not only need to clarify its previous ruling but needed to hold an entirely new trial. According to Rini, there existed "no documents evidencing the creation of the [e]asement over Parcel 031," and testimony was necessary "to address whether the 30 foot wide easement exists[.]" Rini believed that, because this Court had access to the entire trial court record, if there was "sufficient evidence in the record to revise the judgment, [this Court] could have and would have done so itself," and "[t]he fact that [this Court] did not demonstrates that a new trial is necessary to determine whether there is a factual record that supports the Loyers' claims." Rini recognized that this Court remanded for the trial court to state its legal findings but contended that there were no factual findings that could support a legal finding of an easement, so a new trial was necessary.

After receiving the parties' briefing, the trial court issued a 16-page written opinion and order on April 21, 2023. The court rejected Rini's argument that the case needed "to be re-tried," reasoning that this Court only directed the trial court "to articulate the legal basis for finding that [the Loyers] have an easement over Lot 031." The trial court then listed the evidence it reviewed from the trial and made findings of fact, paying special attention to the chain of title for Lot 031 and what was conveyed with each transaction. The trial court summarized its findings as follows:

> In summary, the findings of fact support that the Beitler family owned all of the property at issue until 1960 when they divided the property and established a fifteen-foot easement that became a private road—Robert Castle Drive—via a Warranty Deed. The findings of fact also support that the Beitler family transferred a land-locked parcel located at the southern end of the private road to Mr. Loyer's parents in 1973 via a Warranty Deed, which included a 30-foot easement. The findings of fact further support that the Beitler family transferred the Lot 17 to the Carlsons and that it included a 15-foot easement as a portion of the private road in 1978 via a Warranty Deed. Finally, the findings of fact establish that there are no recorded documents that extinguish the easement used to create Robert Castle Drive[.]

The court accordingly found that the Loyers' parcel "has an express easement defined as a 30-foot easement for egress and ingress over Lot 31 from Pontiac Lake Road to the beginning of Lot 17, where it reduces to a 15-foot easement for egress and ingress only on Lot 31." (Emphasis omitted.) The court also addressed whether the Loyers had an easement by prescription in excess of this express easement, and it concluded that they did not. At the end of the opinion, the court required the Loyers to submit a proposed judgment under the 7-day rule consistent with the court's rulings. The Loyers did so, and the trial court entered the final judgment on May 25, 2023.

---

[1] The Loyers also argued that this Court's opinion left untouched the trial court's original rulings that the Loyers had established easements by prescription and acquiescence at the curved ends of the roadway, so they did not address that issue further.

This appeal followed.

## II. STANDARD OF REVIEW

On appeal, the Loyers contend that the trial court exceeded the scope of this Court's remand instructions by considering whether the Loyers established easements by prescription on either end of the express easement that is Robert Castle Drive. We agree.[2] Whether a trial court followed this Court's instructions on remand presents a question of law reviewed de novo. *Schumacher v Dep't of Nat Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

## III. ANALYSIS

"When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Bus Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted). See also *id*. at 352 (explaining that it is a "well-accepted principle in our jurisprudence that a lower court must strictly comply with, and may not exceed the scope of, a remand order").

The Loyers argue that this Court's opinion in the first appeal did not disturb the trial court's original rulings that the Loyers had easements by prescription and acquiescence on either end of Robert Castle Drive, and that this Court only ordered the trial court to explain the legal basis for its finding of a 30-foot-wide easement from the Loyers' parcel to Pontiac Lake Road, so the trial court exceeded the scope of its remand order by reconsidering whether the Loyers had easements by prescription and acquiescence. We agree.

Following the bench trial in this case, the trial court made three pertinent rulings in the following three paragraphs of its original March 2021 judgment:

> 3. The owners of the Loyer[s'] Parcel have an easement in conformity with the Private Road Maintenance Agreement recorded at Liber 9890, Page 162 which

---

[2] Rini challenges this Court's jurisdiction to hear this case, arguing that this Court does not have jurisdiction over the Loyers' appeal as of right under MCR 7.203(A)(1) because the May 25, 2023 judgment was not a final judgment under MCR 7.202(6)(a)(*i*). This is so, Rini argues, because the trial court's April 21, 2023 opinion and order was the first final order that adjudicated and resolved all of the claims in this case, so this was the final judgment for purposes of MCR 7.202(6)(a)(*i*) that the Loyers had to appeal. We disagree. While the April opinion and order did say that it was a final order that closed the case, that language is not controlling. See *Faircloth v Family Indep Agency*, 232 Mich App 391, 400-401; 591 NW2d 314 (1998). The April opinion and order could not have been a final judgment because it stated that "the Court will enter a judgment" doing certain things, and directed the Loyers to submit a proposed judgment consistent with what the court stated. Pursuant to this directive, the Loyers submitted a proposed judgment reflecting the trial court's rulings, and that proposed judgment became the May 25, 2023 judgment. We are therefore satisfied that the May judgment is a final judgment for purposes of MCR 7.202(6)(a)(*i*), and this Court has jurisdiction over the Loyers' appeal under MCR 7.203(A)(1).

extends fifteen (15) feet of either side of the property line as described in that document.

> 4. [The Loyers] have acquired an easement by acquiescence and prescription on the southern end of Robert Castle Drive over the corner nearest [the Loyers'] property as depicted on the attached GreenTech survey.

> 5. [The Loyers] have acquired an easement by acquiescence and prescription on the northern end of Robert Castle Drive as depicted on the attached GreenTech survey.

For the reasons that follow, we conclude that a careful reading of this Court's previous opinion makes plain that the panel in the prior appeal only vacated the trial court's ruling in Paragraph 3 of the March 2021 judgment.

In this Court's conclusion in the first appeal, the panel stated:

> We vacate the portion of the trial court's judgment awarding the Loyers an easement over a portion of Lot 017. We also vacate the portion of the trial court's judgment holding that the Loyers have an easement over a 15-foot-wide section of Lot 031 and remand for the trial court to sufficiently articulate the legal basis for finding this easement. [*Loyer*, unpub op at 9.]

This Court's conclusion related to Lot 017 necessarily related only to Paragraph 3 because only Paragraph 3 addressed Lot 017. The easement identified in Paragraph 3 that "extend[ed] fifteen (15) feet of either side of the property line" was describing a 15-foot easement over Lot 031 and a 15-foot easement over Lot 017. The easements described in Paragraphs 4 and 5 at either end of Robert Castle Drive were not over Lot 017.

The easements identified in Paragraphs 4 and 5 were only over Lot 031, and while this Court vacated the trial court's finding of an easement over Lot 031, it is apparent from the prior panel's discussion of Lot 031 that this Court did not vacate the trial court's finding of easements by prescription and acquiescence over Lot 031. When discussing Lot 031, this Court only considered Rini's argument that the trial court's finding of an easement over Lot 031 ran afoul of the statute of frauds. See *id*. at 3-6. This by itself made clear that this Court was not addressing Paragraphs 4 and 5 of the trial court's March 2021 judgment because, as the Court recognized, an easement by prescription is not subject to the statute of frauds. See *id*. at 5. Only Paragraph 3 of the trial court's judgment was potentially subject to the statute of frauds, so that was the only portion of the trial court's judgment that Rini's statute-of-frauds argument concerned, and, correspondingly, that was the only portion of the judgment that this Court vacated for clarification.

That this Court did not consider Paragraphs 4 and 5 as part of Rini's argument respecting Lot 031 is further confirmed by considering this Court's analysis of Rini's argument. The Court described Rini's statute-of-fraud argument as "a more advanced argument about the validity of the private road maintenance agreement to create easement rights over Lot 031." *Id*. at 4. And the Court explained that the private road maintenance agreement did not satisfy the statute of frauds with respect to Lot 031 because the agreement did not bind Rini or a predecessor owner of Lot 031. *Id*. at 5. Only Paragraph 3 of the trial court's March 2021 judgment referenced "the Private

Road Maintenance Agreement," confirming that this Court considered Rini's argument as only a challenge to Paragraph 3 of the trial court's ruling.

More significantly, when analyzing Rini's argument respecting Lot 031, the only reference that this Court made to the trial court's rulings in Paragraphs 4 and 5 of the March 2021 judgment was to cite the trial court's rulings in those paragraphs as examples of where the trial court adequately explained the legal basis for its findings. The Court stated:

> In its opinion and order, the trial court found that the Loyers have an easement by acquiescence and prescription at the *curves* that extend beyond the 15-foot-wide portions of Lots 017 and 031, at both the northern and southern ends of Robert Castle Drive. But the trial court did not otherwise specify its legal conclusions supporting its determination that an easement existed with respect to the 15-foot-wide portions on either side of the property line separating Lots 017 and 031. [*Id*. at 5]

Clearly, then, when this Court "vacate[d] the portion of the trial court's judgment holding that the Loyers have an easement over a 15-foot-wide section of Lot 031 and remand[ed] for the trial court to sufficiently articulate the legal basis for finding this easement," *id*. at 9, the Court was not referring to the easements found by the trial court in Paragraphs 4 and 5 of the March 2021 judgment because this Court cited the trial court's findings in those paragraphs as examples of where the trial court *sufficiently articulated the legal basis for its findings*.

In short, as we read this Court's prior opinion, it only vacated Paragraph 3 of the trial court's original judgment, which found a 30-foot-wide easement from the Loyers' property to Pontiac Lake Road. This Court left untouched Paragraphs 4 and 5 of the trial court's judgment, which found easements by prescription and acquiescence on either end of the easement found in Paragraph 3. This Court's remand order was limited to ordering the trial court to explain the basis for that court's finding of a 30-foot-wide easement from the Loyers' property to Pontiac Lake Road. As part of this order, the Court clarified that the easement could not encumber Lot 017 because that lot was not the subject of this litigation. See *id*.

Consistent with this Court's remand order, the trial court explained at length the basis for its finding in Paragraph 3 of its original judgment—the court explained that it was finding that the Loyers had a 30-foot-wide express easement stretching from their property to Pontiac Lake Road, consisting of a 30-foot-wide easement on Lot 031 from Pontiac Lake Road to the beginning of Lot 017, then dropping to a 15-foot-wide easement from where Lot 017 started to the Loyers' property. The court then proceeded to exceed the scope of this Court's remand order by reconsidering its rulings in Paragraphs 4 and 5 of its original judgment. That is, the court exceeded the scope of the remand order by finding that the Loyers had not established easements by prescription and acquiescence on either end of their express easement. As explained, this Court's previous opinion left untouched the trial court's rulings in Paragraph 4 and 5, and the remand order was limited to having the trial court explain the basis for its ruling in Paragraph 3.

Rini argues that this Court's previous opinion "vacated the easement in whole with respect to Lot 031," so the court was "free to assess the reasoning for the entire easement." In support of this argument, Rini principally relies on the fact that this Court "did not specify that it was leaving

[Paragraphs 4 and 5] of the trial court's original judgment in place, nor did it otherwise separately consider the Loyers' prescriptive easement theory." Rini's argument thus hinges on the fact that this Court's previous opinion was not a model of clarity, but this is not dispositive. While this Court's prior opinion did not specify that it was leaving in place Paragraphs 4 and 5 of the trial court's March 2021 judgment, the opinion did not specify that it was vacating those rulings either. What we are left with, then, is trying to decipher what the previous panel's rulings meant. For the reasons explained above, we think it clear that the original panel did not vacate Paragraphs 4 and 5 of the trial court's March 2021 judgment, and accordingly limited the trial court on remand to explaining the basis for the finding of the 30-foot-wide easement in Paragraph 3 of its original judgment. The trial court thus exceeded the scope of the remand order by reconsidering its rulings in Paragraphs 4 and 5 of its original judgment.

Accordingly, we vacate the trial court's ruling in its April 21, 2023 opinion and order that addressed whether the Loyers established an easement by prescription. The trial court's original ruling in Paragraphs 4 and 5 of its March 2021 judgment were never vacated, and the trial court is instructed to incorporate those rulings into a new judgment on remand.

Vacated in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett